## C. H. RAY v. THE STATE.

No. 20064.   Delivered January 4, 1939.
Rehearing Denied February 8, 1939.

The opinion states the case.

*N. G. Williams,* of Dallas, and *J. G. Lyles,* of Franklin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Appellant was charged by indictment with the unlawful killing of Monroe Templeton, and was by the jury convicted of murder without malice and given a penalty of five years in the penitentiary.

The facts are brief and show that the deceased was killed by a blow from an axe which struck him on the head, rendering him unconscious. There is testimony that there were other bruises on his body that could have been inflicted at the same time that the fatal wound was given. There were no eye-witnesses save the participants in the tragedy.

There are but five bills of exception in the record, three of which,—bills Nos. 1, 2 and 3,—relate to the same proposition, and can be treated together. Such bills are to the effect that the trial court permitted testimony relative to the quiet and inoffensive character of the deceased, when deceased's character for such attributes had not been put in issue by the appellant.

Three witnesses were permitted to testify that deceased's character as a peaceable, quiet and law-abiding citizen was good, over the objection of appellant that, first, such witnesses were testifying from their own opinion and personal observation, and were giving their personal opinion, and were not competent to so testify, and, second, for the reason that the deceased's character and reputation had not been put in issue by the appellant.

The first reason above offered is not borne out by the witnesses' testimony, it being shown therefrom that the witnesses qualified under proper questions relative to such reputation, and the objection offered thereto went to the weight rather than to the admissibility of their testimony.

The second reason for such objection gives us more concern. It is the State's contention that the appellant's own testimony placed the question of deceased's repuatation in issue for being a quiet and inoffensive man, or a violent and dangerous one. In the court's qualification to bill No. 3 he says that he admitted such testimony because of the testimony of the appellant as follows: "The reason I hit him with that axe was because I had been informed that he was a dangerous

man; that he was a bad scrapper. I was afraid of my own life. I would do the same thing over again if I had to, as bad as I would hate to."

We also find the further statement of appellant in his testimony in the statement of facts: "Relative to whether we had any trouble before, I had heard he (deceased) was a bad man," and again: "From what I had heard about him I knew my life was in danger."

It is our opinion that the above quoted testimony of the appellant amounted to proof upon his part that the deceased was a person of a violent and dangerous character, and would therefore render admissible proof upon the part of the State that the deceased was of a quiet and inoffensive disposition.

This court has held in Ghent v. State, 176 S. W. Rep. 569, that where the appellant testified that certain persons had told him that deceased was as bad a man as could be found in that community and needed to be watched, evidence of the good character of deceased was admissible. To the same effect is the case of Johnson v. State, 167 S. W. Rep. 734. See also Chappell v. State, 61 S. W. (2d) 842.

We are aware that communicated threats are a sufficient reason for the introduction of testimony favorable to the character of deceased, and is usually the ground for such introduction as an attack upon the deceased's character, but we have no threats appearing herein as having come from the deceased. We do have testimony, however, of threats upon the part of appellant. Mr. Marshall testified: "Sometime along about the first part of November of last year Mr. Ray came over to my house and just made the remark, and says 'I have cleaned off my barn door and if that old gray mule comes up there any more I am going to shoot her,' and says 'I am not going to stop at one shot as long as there is one in my magazines' and said 'if Monroe says anything I may have some for him.' * * * It was the evening before he (Monroe Templeton) was knocked in the head the next morning that he told me that."

We also find from the testimony of J. C. Templeton, the deceased's thirteen-year-old son, that on the morning of the difficulty, as he was going to school, passing near appellant's house, he was called by appellant and asked where Roland, an older brother, was, and the appellant said: "I knocked your daddy in the head and to come and get him." Appellant's complaint of having received the highest punishment for murder without malice may have been and probably was based upon the two above quoted portions of the testimony.

It occurs to us 'that one may attack a deceased's reputation for being a violent and dangerous man by appellant's own testimony, as well as by the testimony of others, and it is our opinion that the above quoted excerpts from appellant's testimony was such an attack as to put in issue such reputation. We also note that after this testimony, complained of in such three bills, relative to the deceased,—was introduced before the jury, that appellant offered the testimony of certain witnesses showing, in effect, that deceased's reputation was that of a violent and dangerous character.

The appellant also complains of the remarks of the county attorney in his closing address to the jury wherein he said: "He (referring to N. G. Williams, one of the defendant's attorneys) says 'I think he is not guilty.' But twelve other men when they indicted him thought so." We note that the learned trial judge immediately instructed the jury to disregard such remarks and not consider them for any purpose, and also gave them a charge in writing to the following effect: "Gentlemen of the Jury: You are charged that the remark of the county attorney that, 'He says I think he is not guilty. But twelve other men when they indicted him thought so,' should not have been made by the county attorney, and you should not consider the same for any purpose whatever."

Evidently one of appellant's attorneys had given his personal opinion that appellant was not guilty of the offense charged, and the county attorney had answered such argument with the complained of statement. Under the facts and prompt instruction of the court we do not think any serious error was committed. The jury surely knew that a grand jury had indicted him, and they knew the scope of its duties and functions as laid down in the statutes, and in the light of the court's statement relative to such remarks, they could not have been harmfully influenced by such. Most of the cases cited by appellant in his brief upon this proposition refer to remarks made to former petit juries and their verdict upon a former trial of such case, and it can readily be seen that a more serious matter would be herein presented had the remarks herein complained of referred to any such former trial rather than to a performance of a preliminary duty by a grand jury. For a case in point see Shaw v. State, 229, S. W. Rep. 509.

The facts in this case seem to support the verdict rendered,—in fact would have supported a more onerous one, and perceiving no error herein the judgment is affirmed.

250

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After carefully re-examining the record in the light of appellant's motion for rehearing we are constrained to adhere to the conclusions expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.